IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM SHANK, *et al.*,

                     **Plaintiffs,**

      **v.**

EAGLE TECHNOLOGIES, *et al.*

                     **Defendants.**

Case No. 8:10-cv-02231-RWT

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT PROTECTION STRATEGIES INCORPORATED'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE ISSUE OF SUCCESSOR LIABILITY**

This motion concerns PSI's liability, as a successor in interest, for alleged wage violations that occurred *before* PSI acquired the federal contract at issue and, thus, *before* PSI employed any of the Plaintiffs.  Counts One through Eight of the Amended Complaint assert a variety of wage claims against the Plaintiffs' prior employer, Eagle Technologies, Inc. ("Eagle"), and their subsequent employer, PSI.  Count Nine of the Amended Complaint contends that PSI is liable for any damages caused by Eagle pursuant to the theory of successor liability.  Plaintiffs' desire to hold PSI accountable for damages allegedly incurred during Eagle's watch is undoubtedly the result of Eagle being judgment proof; Eagle filed for Chapter 7 bankruptcy protection on September 15, 2010.

Plaintiffs have no evidence that would support the imposition of successor liability against PSI for any state law claims.  As a general rule, a

corporation which acquires the assets of another corporation is not liable for the debts or liabilities of the predecessor corporation.  Because Plaintiffs have no evidence that would support any of the four exceptions Maryland recognizes to this general rule, PSI cannot be held liable for any state law claim on a successor liability theory as a matter of law.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once the moving party has demonstrated the lack of a material dispute suitable for trial, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *See Celotex Corporation v. Catrett,* 477 U.S. 317, 324 (1986) (*quoting* Fed. R. Civ. P. 56(e)). If the non-moving party has evidence to support its position, it must make such evidence known; a party may not rest its case on the vague hope that something may turn up at trial.  *See Zoby v. American Fidelity Co.,* 242 F. 2d 76, 80 (4th Cir. 1957).  Similarly, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Record Corp.*, 475 U.S. 574, 586 (1986).

The evidence proffered by the non-moving party in opposition to a motion

for summary judgment must be persuasive.  A party may not merely replace the conclusory allegations of its complaint with the conclusory allegations of an affidavit.  *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990).  While a court must draw all reasonable inferences in favor of the non-movant, such inferences must be legitimate and reasonable; a "mere scintilla of evidence is not enough."  *See, e.g., Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir. 1984).  In short, the proper test is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party" opposing summary judgment.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986).

## UNDISPUTED MATERIAL FACTS

1.      On or about January 30, 2009, Eagle was awarded a government contract (the "NBACC Guard Contract") to provide security guard services at the National Biodefense Analysis and Countermeasures Center ("NBACC") located in Fort Detrick, Maryland.  A copy of the award of the NBACC Guard Contract is attached as Exhibit 1.

2.      Pursuant to the NBACC Guard Contract, Eagle began utilizing Plaintiffs as guards at NBACC starting in the Spring of 2009.  *See, e.g.,* Complaint, *passim.*

3.     On or about March 1, 2010, PSI's subsidiary[1] and Eagle executed an Asset Purchase Agreement whereby PSI agreed to purchase substantially all of Eagle's assets for $2,550,000.00.  A copy of the Asset Purchase Agreement is attached as Exhibit 3.

4.     In the Asset Purchase Agreement, PSI and Eagle agreed upon a schedule ("Schedule 1.1") that expressly described the assets PSI was purchasing.  Schedule 1.1 included the NBACC Guard Contract.  For the Court's convenience, a separate copy of Schedule 1.1 is attached as Exhibit 4.

5.     In the Asset Purchase Agreement, PSI and Eagle agreed that PSI would only assume Eagle liabilities as expressly described in the Asset Purchase Agreement.  *See* Ex. 2 at ¶ 1.2.

6.     In the Asset Purchase Agreement, PSI and Eagle agreed upon a schedule ("Schedule 1.2") that expressly described the liabilities that PSI was assuming.  For the Court's convenience, a separate copy of Schedule 1.2 is attached as Exhibit 5.

7.     Nowhere in the Asset Purchase Agreement or in Schedule 1.2 did PSI agree to assume Eagle's liability for any claims any of the Plaintiffs may

---

[1]The entity known as "Protection Strategies Incorporated" – which is the entity Plaintiffs sued in this case – is different from a separate, similarly named, entity called "Protection Strategies Incorporated (PSI)."  Copies of corporate documents demonstrating this are attached as Exhibit 2.  In short, the Plaintiffs sued the entirely wrong entity – they sued the parent when they should have sued the subsidiary. Nonetheless, the successor liability analysis does not change.  For practical purposes, references to "PSI" from here on in this brief shall mean the PSI entity that actually purchased the assets and the entity that Plaintiffs should have sued.

4

have had against Eagle.  *See* Ex. 2 at ¶ 1.2 and Ex. 5.

8.    PSI's purchase of Eagle's assets was undeniably an arms-length transaction for fair consideration.  All of Eagle's assets were subject to a security interest for the benefit of Wachovia Bank ("Wachovia").  In fact, Eagle had granted Wachovia a security interest in all of its personal property "of every kind and nature including, without limitation, all accounts, equipment ...inventory...instruments, documents...and general intangibles, wherever located."  Copies of the UCC filing statements related to Wachovia's security interest are attached as Exhibit 6.

9.    At the time of the Asset Purchase Agreement, Eagle owed Wachovia more than $7 million.  Consequently, and pursuant to a Conditional Release and Settlement Agreement (the "Wachovia Release"), Wachovia and Eagle agreed that PSI's entire $2,550,000.00 purchase price would be paid directly to Wachovia in exchange for Wachovia releasing the liens it had against Eagle and it guarantors.  A copy of the Wachovia Release is attached as Exhibit 7.

10.    Two days after the PSI purchase closed, Wachovia released its security interest in Eagle's assets.  See Ex. 6.

11.    At the time Eagle executed the Asset Purchase Agreement, Eagle's shareholders were Nicholas V. Christiansen, Sr. ("Christiansen"), Wesley E. Sturdivant ("Sturdivant") and Betty J. Joseph ("Joseph").  In the Asset Purchase Agreement, each executed the Informal Action of Stockholders

5

approving the asset sale to PSI.  For the Court's convenience, a separate copy of the Informal Action of Stockholders is attached as Exhibit 8.

12.    At the time Eagle executed the Asset Purchase Agreement, its only officers and directors were Christiansen and Sturdivant.  For the Court's convenience, separate copies of the Certificate of Secretary of Eagle Technologies, Inc. and the Informal Action of Directors, each contained in the Asset Purchase Agreement, are attached as Exhibit 9.

13.    PSI's sole shareholder has always been its parent company – Protection Strategies Incorporated.  *See* Affidavit of Keith Hedman, attached as Ex. 10, at ¶ 4.  Hedman has always been the sole shareholder of that parent company.  *See* Ex. 10 ¶ 2.

14.    On September 15, 2010, Eagle filed a Chapter 7 bankruptcy petition (the "Eagle Bankruptcy Petition") in the United States Bankruptcy Court for the District of Maryland.  A copy of the Eagle Bankruptcy Petition is attached as Exhibit 11.

15.    In the Eagle Bankruptcy Petition, Eagle listed three owners of Eagle's stock – Christiansen owned 90% of Eagle's stock while Ed Tay ("Tay") and Sturdivant each owned 5% of Eagle's stock.  *See* Ex. 11 at page 40.

16.    Keith Hedman has never owned any shares of the stock of Eagle.  *See* Ex. 10 at ¶ 8.

17.    Neither PSI entity has ever owned any shares of the stock of Eagle.

6

*See* Ex. 10 at ¶¶ 9-10.

18.   Neither Christiansen, Sturdivant, Tay or Joseph have ever owned any stock in either PSI entity.  *See* Ex. 10 at ¶ 11.

19.   PSI and Eagle have never had any common ownership.  No individual that has ever owned stock in Eagle has ever owned any stock in either PSI entity at any time.  *See* Ex. 10 at ¶ 12.

20.   There has never been any commonality of officer or directors between any PSI entity and Eagle.  Neither Christiansen nor Sturdivant has ever been an officer or director of either PSI entity.  *See* Ex. 10 at ¶ 13.

## ARGUMENT

At issue here is a run-of-the-mill asset purchase.  Because Plaintiffs have no evidence that will support any successor liability theory recognized under Maryland law, there is no basis for holding PSI liable for any state law claims that should rightfully be asserted only against Eagle.  Particularly damaging to Plaintiffs' successor liability theory under Maryland law is the undisputed fact that there has never been any commonality of ownership between PSI and Eagle.

### I.   MARYLAND'S SUCCESSOR LIABILITY LAW.

"The general rule of corporate liability is that, ordinarily, a corporation which acquires the assets of another corporation is not liable for the debts and liabilities of the predecessor corporation." *Baltimore Luggage Co. v. Holtzman,*

562 A.2d 1286, 1289 (1989).  In fact, in Maryland, "the general rule regarding successor liability is one of non-liability..." *Superior Bank, F.S.B. v. Tandem National Mortgage*, 197 F. Supp. 2d 298, 313 (D. Md. 2000).  Maryland law recognizes four limited exceptions to the general rule: 1) an expressed or implied assumption of liability; 2) the transaction amounts to a *de facto* merger; 3) the successor entity is the mere continuation of the predecessor entity; or 4) the asset purchase is a fraudulent conveyance.  *See, e.g., Baltimore Luggage Co.* at 1289; *HRW Systems, Inc. v. Washington Gas Light Co.*, 823 F.Supp. 318, 326-27 (D. Md. 1993).

To date, Plaintiffs have not made it entirely clear which of the four exceptions they believe apply in this case.[2]  Regardless, it is impossible, as a matter of law, for Plaintiffs to prove any of them.  We will address the case against the application of each exception separately below.

## II.   PSI DID NOT AGREE TO ASSUME EAGLE'S LIABILITY FOR THE PLAINTIFFS' CLAIMS.

PSI did not assume any obligation Eagle may have had to any Plaintiff.  Indeed, the Asset Purchase Agreement could not be any more unambiguous.  In section 1.2 the parties expressly agreed that PSI was not assuming any

---

[2] From statements made in Plaintiffs' pleadings, it appears Plaintiffs' most likely claim is that PSI is the "mere continuation" of Eagle because PSI services the same contracts, utilizing many of the same rank and file employees, as Eagle once did.  As we show below, however, the lack of any common ownership – or even commonality of officers and directors – between PSI and Eagle renders this theory absolutely untenable under Maryland law.

liabilities:

> of any kind or nature, known, unknown, contingent or otherwise, including without limitation:...(iii) any obligation to [Eagle's] employees...(iv) any litigation, proceeding, claim by any person or entity or other obligation of [Eagle] relating to the business or operations of or otherwise relating to the Purchased Assets prior to the Closing Date, whether or not such litigation, proceeding, claim or obligation is pending, threatened or asserted before, on, or after the Closing Date.

This language is specific, definitive and undoubtedly applies to the exact claims Plaintiffs assert in this case. Not only did PSI not expressly assume the Eagle obligations at issue here, PSI expressly *rejected* the possibility of assuming any liability. Faced with such unequivocal contractual language, Plaintiffs would be hard pressed, under any circumstances, to produce a shred of evidence that PSI nonetheless impliedly assumed the obligations in direct contradiction of the Asset Purchase Agreement's plain language.[3] To date, they have produced *no* such evidence in this case.

### III.   THERE WAS NOT A *DE FACTO* MERGER BETWEEN PSI AND EAGLE.

In order for a court to find a *de facto* merger has occurred, "most of the elements of a formal merger must be present with the obvious exception of a

---

[3] Plaintiffs may attempt to argue that PSI's servicing of the same contracts utilizing many of the same employees somehow shows a vague implied agreement to assume liabilities. Such an argument, however, is properly cast as one of the "mere continuation" exception rather than the assumption of liabilities exception. *See, e.g., EHA Consulting Group, Inc. v. Hardin & Assocs., P.C.*, 2010 U.S. Dist Lexis 26245 *8-9 (D. Md. 2010) (noting plaintiff's arguments that the successor served the same clients from the same location using the same employees was an attempt to utilize the rejected continuity of enterprise theory). We address the shortcomings of any "mere continuation" argument below.

specific designation of the agreement as a merger." *Cummings v. United Artists Theatre Circuit, Inc.*, 204 A.2d 795, 806 (Md. 1964). This includes such elements as the dissolution of one of the corporations, the transfer of all of the shares of one corporation to the acquiring corporation, the acquiring corporation's assumption of the liabilities of the dissolved corporation, and the shareholders of the dissolved corporation surrendering their shares and receiving newly issued shares of the acquiring corporation. *See id.* at 807. None of these things happened in the case of PSI's purchase of Eagle's assets. In particular, none of the shareholders of Eagle received any shares of PSI.

There simply cannot be a *de facto* merger without, among other things, some degree of common ownership between the two corporations. The owners of Eagle did not receive any ownership stake in PSI. Accordingly, there could not have been a de facto merger of the two companies as a matter of law.

## IV.   PLAINTIFFS CANNOT POSSIBLY SHOW THAT PSI ACQUIRED EAGLE'S ASSETS AS PART OF A FRAUDULENT CONVEYANCE.

PSI paid fair consideration for Eagle's assets. As indicated by the Wachovia Release and the UCC filings, the only evidence in this case is that, as a practical matter, PSI acquired Eagle's assets in a short sale from Eagle's secured creditor – Wachovia. Clearly Wachovia had an interest, as well as a fiduciary duty to its shareholders, to obtain the most money that it could for Eagle's assets. To that end, Wachovia obtained $2,550,000.00 for Eagle's assets and then, presumably, wrote off the rest of Eagle's indebtedness as

uncollectible.  If there was a higher price to be paid for Eagle's assets, Wachovia would have undoubtedly extracted it.  Plaintiffs simply have no evidence to counter what is so plainly obvious.

Even if the Plaintiffs wanted to argue that PSI did not pay fair consideration for Eagle's assets, they lack the ability to pursue such a theory at trial.  Clearly, valuing the Eagle assets would require Plaintiffs to put on expert testimony.  *See, e.g., Jones v. Reichert Jung, Inc.*, 211 F. Supp. 2d 661, 667 (D. Md. 2002) (noting expert testimony is required when regarding a subject that "is particularly related to some science or profession that it is beyond the ken of the average layman.").  The Plaintiffs, however, have not named such a valuation expert and the deadline for Plaintiffs to identify any expert witnesses expired on August 8th.  Absent testimony from an expert in business valuation, Plaintiffs cannot possibly put on reliable, admissible evidence that $2,550,000.00 was not a fair price for Eagle's assets.

Since it is undisputed that PSI paid fair consideration for Eagle's assets, the only way that Plaintiffs could possibly prove a fraudulent conveyance is to show that PSI knew that Eagle intended to defraud its creditors and that PSI actively participated in that fraudulent intent.  *See* Maryland Com. Law Code § 15-207; *Berger v. Hi-Gear Tire & Auto Supply, Inc.*, 263 A.2d 507 (1970); *Long v. Dixon*, 93 A.2d 758, 763 (Md. 1953).  Once again, Wachovia's participation in the transaction conclusively disproves any possibility that there was any intent

to defraud any of Eagle's creditors.  Wachovia held a security interest in all of

Eagle's assets.  Importantly, it is undisputed that Eagle's debt to Wachovia far

exceeded the value of its assets.  Consequently, the only creditor that ever

stood to recover any money from Eagle was Wachovia.  Wisely, PSI pressed

forward with the Asset Purchase Agreement only after first obtaining

Wachovia's blessing.  There were no other creditors that could even potentially

be defrauded from the liquidation of Eagles's assets because no other creditor

had a security interest in the assets.  In short, every creditor other than

Wachovia was guaranteed to receive *nothing* from Eagle's inevitable liquidation.

PSI's purchase of Eagle's assets was an arms-length transaction, for fair

consideration, that did not unfairly prejudice any of Eagle's creditors.  Plaintiffs

cannot possible present any admissible evidence to the contrary.

Consequently, Plaintiffs cannot impose successor liability under a fraudulent

conveyance theory as a matter of law.

### V.    PSI IS NOT THE "MERE CONTINUATION" OF EAGLE, AS A MATTER OF MARYLAND LAW, BECAUSE THERE IS NO COMMON OWNERSHIP, NOR ANY COMMON OFFICERS OR DIRECTORS, BETWEEN THE TWO COMPANIES.

Plaintiffs will likely argue that PSI is the "mere continuation" of Eagle

because PSI continued much of the business of Eagle and did so with some

common lower-level management and employees.  Such an argument, however,

only shows what courts deem to be "continuity of enterprise."  Critically,

Maryland has expressly rejected the "continuity of enterprise" theory as a basis

12

for imposing successor liability.  Rather, Maryland applies a more strict standard; only imposing successor liability in cases where the two entities share common ownership and common officers and directors – a situation known as "continuity of entity."  Indeed, there does not appear to be a  single reported Maryland decision where successor liability was imposed under a mere continuation theory when there was no common ownership between the entities.

"Successor liability predicated on continuity of the entity is to be distinguished from continuity of the enterprise." *Academy of IRM v. Environmental Services, Inc.*, 687 A.2d 669, 677 (Md. 1997).  The continuity of entity exception only applies where there "is a continuation of directors and management, shareholder interest and, in some cases, inadequate consideration." *Nissen Corp. v. Miller*, 594 A.2d 564, 567 (Md. 1990).  In short, continuity of entity occurs when "the purchasing corporation maintains the same or similar management and ownership but wears a 'new hat.'" *Id.*  "In contrast, *the continuity of enterprise theory focuses on continuation of the business operation or enterprise when there is no continuity of ownership.*" *Id.* (emphasis added).  As this Court has plainly stated, continuity of the entity does not exist "unless, after the transfer of the assets, only one corporation remains, and there is an identity of stock, stockholders, and directors between the two corporations." *HRW Systems, Inc. v. Washington Gas Light Co.*, 823

13

F.Supp. 318, 330 (D. Md. 1993). Because it is undisputed that there was no continuity of ownership – or even continuity of officers and directors – in this case, Plaintiffs' cannot demonstrate continuity of entity as a matter of law. Plaintiff can, at most, only show continuity of enterprise. This is fatal to their state law claims.

Critically, continuity of enterprise has been repeatedly rejected by the Maryland courts as a basis for successor liability under state law. *See, e.g., EHA Consulting Group, Inc. v. Hardin & Assocs, P.C.,* 2010 U.S. Dist Lexis 26245 (D. Md. 2010); *Rafael v. Hurst Performance, Inc.,* 793 F. Supp. 116 (D. Md. 1992); *Nissen Corp. v. Miller,* 594 A.2d 564 (Md. 1991); *Baltimore Luggage v. Co. v. Holtzman,* 562 A.2d 1286 (Md. 1989). As this Court recently held, Maryland only recognizes successor liability in situations where there is continuity of the entity; not when there is merely continuity of the enterprise. *See EHA Consulting Group, Inc. v. Hardin & Assocs, P.C.,* 2010 U.S. Dist Lexis 26245, *7-8 (2010).

The only thing that is relevant in a continuity of entity analysis is ownership and control.[4] It is undisputed that no person that has ever owned any interest in Eagle has ever owned any interest in PSI. It is equally undisputed that no person that has ever been an officer or director of Eagle has

_____

[4] Plaintiffs' likely arguments regarding the same employees, performing the same work, at the same locations – and even wearing the same uniforms – are all continuity of the enterprise arguments. Consequently, all of those arguments are irrelevant to the state law claims.

14

ever been an officer or director of PSI.  Because there has never been any common ownership between PSI and Eagle, nor any common officers or directors, there cannot be continuity of entity as a matter of law.  Accordingly, Plaintiffs cannot impose successor liability, based upon a mere continuation theory, on any Maryland state law claims.

### VI.   PLAINTIFFS' CONTINUITY OF ENTERPRISE ARGUMENT REMAINS ARGUABLY VIABLE FOR THE PLAINTIFF'S SINGLE FEDERAL CLAIM.

The case of *HRW Systems Inc. v. Washington Gas Light Co.,* explains the difference between federal law and Maryland law when it comes to the mere continuation exception.  While continuity of enterprise is sufficient to impose successor liability on a federal claim, it is insufficient to impose liability on a Maryland state law claim; for state law claims, one must show continuity of entity which, as noted *supra*, requires proof of common ownership as well as common officers and directors.  *HRW Systems, Inc. v. Washington Gas Light Co.,* 823 F.Supp. 318, 326-27, 330 (D. Md. 1993) ("There is, however, disagreement as to a second theory, that of 'continuity of enterprise,' which is applicable, in the Fourth Circuit, on federal claims, but not on Maryland state-law claims...").

Plaintiffs have asserted only a single federal claim – Count Six which alleges violations of the Fair Labor Standards Act.  Because, at this juncture, there are arguably questions of fact regarding whether Plaintiffs could possibly prove "continuity of enterprise," Plaintiffs should be permitted to seek successor liability solely on this single federal claim.

15

## CONCLUSION

Plaintiffs desperately wish to impose successor liability on PSI. However, it is undisputed that no person that ever owned any interest in Eagle has ever owned any interest in PSI. It is equally undisputed that no person that was ever an officer or director of Eagle has ever been an officer or director of PSI. With absolutely no common ownership between the two companies, nor any common officers or directors, Plaintiffs cannot impose successor liability for any state law claims under a mere continuation theory as a matter of law. Plaintiffs' ability to impose successor liability on any theory other than mere continuation is equally groundless. Accordingly, PSI is entitled to partial summary judgment and a finding that PSI is not subject to successor liability on any of the Plaintiffs' state law claims.

Respectfully submitted,

**FRIEDLANDER MISLER, PLLC**

By: */s/ Thomas F. Murphy*
Robert E. Greenberg, Esq.
Thomas F. Murphy, Esq.
1101 17th Street, NW
Suite 700
Washington, DC 20036-4704
(202) 872-0800
*Counsel for Protection Strategies Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 31, 2011, a copy of the foregoing, was served via first-class mail to:

George Hermina, Esq.
John Hermina, Esq.
Hermina Law Group
8327 Cherry Lane
Laurel, Maryland 20707
*Counsel for Plaintiff*s

By: */s/ Thomas F. Murphy*
Thomas F. Murphy