# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

---

**WILLIAM SHANK,** *et al.*     )
              )
        **Plaintiffs,**     )
              )
        **v.**         )     **Civil Action No. RWT-10-2231**
              )
**EAGLE TECHNOLOGIES, INC.,** *et al.*     )
              )
        **Defendants.**     )
--- )

## <u>REPORT & RECOMMENDATION</u>

On April 5, 2013 the Honorable Roger W. Titus referred this case to the undersigned for a Report and Recommendation on Defendant's Motion for Attorneys' Fees (ECF No. 188).  *See* ECF No. 199.  In addition to that motion, four other motions are pending:  (a) Plaintiffs' Motion to Strike or Dismiss Defendant's Motion for Award of Costs and Attorneys' Fees to be Imposed against Plaintiffs' Counsel pursuant to 28 U.S.C. § 1927 (ECF No. 190), (b) Plaintiffs' Motion for Sanctions against Defendant's Counsel pursuant to 28 U.S.C. § 1927 (ECF No. 192), (c) Plaintiffs' Motion for Leave to File Supplemental Response to Defendant's Motion for Award of Costs and Attorneys' Fees and Supplementary Exhibits/Evidence and Memorandum of Law in Support of Plaintiffs' Motion for Sanctions against Defendant's Counsel pursuant to § 1927 (ECF No. 197) and (d) Defendant's Motion to Strike Plaintiffs' Reply Brief and for Sanctions (ECF No. 201).

## BACKGROUND

The parties consist of twelve Plaintiffs and two Defendants.  With the filing of bankruptcy by Defendant Eagle Technologies, Inc., *see* ECF No. 24, and the court staying

proceedings as to Defendant Eagle Technologies, Inc. pending the resolution of the bankruptcy matter, *see* ECF No. 28, the litigation continued with the active participation of the remaining Defendant, Protection Strategies, Inc. (hereinafter "PSI").

In late February of 2012, six of the Plaintiffs (Steven Queen, Jr., Bruce Matthews, Sean Benton, Rachel Frank, Joseph Parker and William Arthur) settled their claims with PSI. *See* ECF No. 133. On March 2, 2012 the court approved the amended stipulation of dismissal as to these Plaintiffs. *See* ECF No. 134. In early April of 2012, three additional Plaintiffs (Meran Kline, JoAnn Wilson and Andre Steverson) settled their claims with PSI. *See* ECF No. 136. On April 6, 2012 the court approved the stipulation of dismissal as to these Plaintiffs. *See* ECF No. 137. With the vast majority of the Plaintiffs settling their claims, the court granted the joint motion to shorten trial, canceling the trial dates of January 8, 2013 through January 31, 2013 and scheduling the jury trial dates for January 8, 2013 to January 11, 2013. *See* ECF No. 144.

On January 3, 2013 Plaintiffs Janet Fish, William Shank and James Wiggins, Jr. filed an emergency motion to continue trial and request for settlement conference. *See* ECF No. 180. The following day Defendant PSI filed a response in opposition. *See* ECF No. 182. That same day the court denied the remaining Plaintiffs' emergency motion. *See* ECF No. 183.

On January 6, 2013 Plaintiffs William Shank and James Wiggins, Jr. filed a stipulation of dismissal. *See* ECF No. 184. On January 7, 2013 Plaintiff Janet Fish filed a stipulation of dismissal. *See* ECF No. 185. On January 8, 2013, the scheduled first day of the jury trial, the court approved the stipulation of dismissal filed by Plaintiffs William Shank and James Wiggins, Jr., *see* ECF No. 186, and approved the stipulation of dismissal filed by Plaintiff Janet Fish, *see* ECF No. 187. The civil case was terminated on January 8, 2013. Two days later, on January 10,

2013, Defendant PSI filed its motion for award of costs and attorneys' fees to be imposed against

Plaintiffs' counsel pursuant to 28 U.S.C. § 1927.

## APPLICABLE LAW

Section 1927 of Title 28 of the United States Code, *Counsel's liability for excessive costs*,

states,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The imposition of § 1927 sanctions is not based on who wins and who loses the case. "It is

concerned only with limiting the abuse of court processes." *Roadway Express, Inc. v. Piper*, 447

U.S. 752, 762 (1980). As the Fourth Circuit has observed, "[s]ection 1927 focuses on the

conduct of the litigation and not on its merits." *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir.

1999).

In the Fourth Circuit a district court must find bad faith by counsel in order to impose

sanctions under § 1927. *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012) (citing

*Chaudhry v. Gallerizzo*, 174 F.3d 394, 411 n.14 (4th Cir. 1999); *Brubaker v. City of Richmond*,

943 F.2d 1363, 1382 n.25 (4th Cir. 1991)). A district court may find bad faith "'when the

attorney's actions are so completely without merit as to require the conclusion that they must

have been taken for some improper purpose such as delay.'" *Griffin Whitaker, LLC v. Torres*,

No. DKC 10-0725, 2010 WL 3895384, at *5 (D. Md. Oct 1. 2010) (quoting *Dobkin v. Johns

Hopkins Univ.*, Civ. No. HAR 93-2228, 1995 WL 167802, at *2 (D. Md. Mar. 24, 1995) (citing

*Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)). Because § 1927 is aimed at an

attorney who unreasonably and vexatiously multiply proceedings, bad faith may be found when

it becomes evident that a claim lacks merit but an attorney persists in litigating the claim nonetheless. *Blue v. U.S. Dep't of Army*, 914 F.2d 525, 537 (4th Cir. 1990). Moreover, sanctions pursuant to § 1927 would be triggered when an attorney "engage[s] in . . . duplicative or unnecessary filings. . ." *Hunt v. Lee*, 166 F. App'x 669, 671 (4th Cir. 2006). In other words, "[s]ection 1927 was intended to sanction conduct [Federal] Rule [of Civil Procedure] 11 does not reach; *i.e.,* protracting or multiplying the litigation to run up the opposing party's costs, remedied by awarding *excess* attorneys' fees and costs." *Bakker v. Grutman*, 942 F.2d 236, 242 (4th Cir. 1991).

A district court may not impose a monetary sanction, including under § 1927, without considering the ability to pay. *Salvin v. American Nat'l Ins. Co.*, 281 F. App'x 222, 226 (4th Cir. 2008). "Inability to pay . . . should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status." *In re Kunstler*, 914 F.2d 505, 524 (4th Cir. 1990) (quoting *White v. General Motors Corp.*, 908 F.2d 675, 685 (10th Cir. 1990) (citations omitted)).

## ANALYSIS

A.    *Defendant's Motion for Costs & Fees pursuant to 28 U.S.C. § 1927*

1.    *Allegedly Unnecessary and Vexatious Tactics by Plaintiffs' Counsel*

    a.    *The Plaintiffs' Refusal to Appear for Depositions*

PSI claims the bad faith of Plaintiffs' counsel is demonstrated by their announcement, at the scheduled deposition of Plaintiff JoAnn Wilson, that Ms. Wilson would not appear, nor any of the other Plaintiffs, even though counsel for the parties had agreed to a deposition schedule. PSI was forced to file a motion to compel the Plaintiffs' appearance. *See* ECF No. 80. Plaintiffs' counsel opposed the motion contending their actions were justified because counsel

for PSI would not agree to a request for an extension of time to respond to certain requests for admission. *See* ECF No. 81. PSI filed a reply in support of its motion to compel. *See* ECF No. 83. The undersigned granted PSI's motion on October 5, 2011. *See* ECF No. 93.

In the Order of October 5, 2011 the undersigned summarized the sequence of events leading to Plaintiffs' counsel reneging on the agreed upon dates for deposing five of the Plaintiffs. The undersigned noted neither side adhered to the court-imposed dates for conducting depositions. The undersigned found the parties agreed to conduct depositions in August and September, 2011. The undersigned further found Plaintiffs' counsel unilaterally withdrew from the deposition agreement because the undersigned denied Plaintiffs' motion for enlargement of time to respond to Defendant's requests for admission. The undersigned reminded Plaintiffs' counsel about Local Rule 104.3.[1] The undersigned specifically found Plaintiffs ran afoul of Local Rule 104.3 by refusing to cooperate with PSI regarding depositions because PSI did not cooperate with Plaintiffs' requested "two week extension" to answer PSI's requests for admission.

Based on a review of the record, the undersigned finds no evidence that the withdrawal from the deposition agreement by Plaintiffs' counsel was undertaken to unreasonably and vexatiously multiply the proceedings in the case. Plaintiffs' counsel withdrew from the deposition agreement in retaliation to their perceived lack of cooperation by Defendant's counsel concerning an unrelated discovery matter. This action by Plaintiffs' counsel was petty and contrary to Local Rule 104.3. Such unprofessionalism however does not constitute bad faith. The undersigned RECOMMENDS the denial of PSI's requested fees and costs in the amount of $2,537.00.

---

[1] "Unless otherwise ordered by the Court, the existence of a discovery dispute as to one (1) matter does not justify delaying taking any other discovery."

*b.*      *Plaintiffs' Motion to Enforce a Settlement Agreement*

PSI seeks $900.00 for fees and costs incurred in responding to what it characterizes as a "baseless" motion to enforce a settlement agreement. By way of background, PSI had offered to settle the case with Plaintiff Steven Queen, Jr. That offer was subsequently withdrawn before Plaintiff Queen accepted. Despite these facts, Plaintiffs' counsel filed an emergency motion to enforce the settlement agreement. *See* ECF No. 107.

In denying the emergency motion to enforce settlement agreement or, in the alternative, for a protective order, the court found Plaintiff Queen omitted a key fact from his timeline, namely, PSI withdrew the settlement offer before Plaintiff Queen accepted. The court noted, because the offer was withdrawn before acceptance, the settlement agreement is not enforceable. *See* ECF No. 110 at 2.

A review of the record clearly demonstrates Plaintiffs' counsel unnecessarily multiplied proceedings in this case by filing an *emergency* motion to enforce a settlement agreement. Plaintiffs' counsel knew PSI's offer had been withdrawn *before* Plaintiff Queen accepted. The emergency motion filed by Plaintiffs' counsel was completely without merit. The only conclusion which can be drawn by the undersigned was the meritless emergency motion was filed for some improper purpose such as delay or to force PSI back to the negotiating table. PSI has shown bad faith by Plaintiffs' counsel.

"While the starting point for determining an appropriate award is ordinarily the hours reasonably expended by the prevailing party's counsel multiplied by a lodestar rate, the Court may adjust this figure upward or downward to accommodate [the losing party's] financial condition, his motive in bringing the lawsuit, and the frivolousness of the case." *Davis v. Target Stores Div.*, 87 F. Supp. 2d 492, 495 (D. Md. 2000). Mr. Murphy, a partner at the law firm of

Friedlander Misler, PLLC ("Friedlander Misler"), has practiced law for more than 16 years. *See* ECF No. 188-2 ¶ 4. Mr. Murphy billed PSI for his professional services at an hourly rate of $375.00. *Id.* ¶ 5. This hourly rate for an attorney admitted to the bar for fifteen (15) years or more is a reasonable rate ($275-$400) in accordance with Appendix B[2] of this court's Local Rules. Mr. Murphy seeks reimbursement in the amount of $750.00 for the two hours he spent drafting the opposition to the emergency motion to enforce settlement agreement. Mr. Murphy should be compensated as requested.

Robert E. Greenberg, Esq., another Friedlander Misler partner, had limited involvement with this case. A practicing attorney for more than 40 years, Mr. Greenberg billed PSI at an hourly rate of $525.00. *See* ECF No. 188-2 ¶ 7. Mr. Greenberg's hourly billing rate exceeds this court's reasonable rate for an attorney admitted to the bar for more than 15 years. The undersigned thus RECOMMENDS a downward adjustment of Mr. Greenberg's hourly billing rate to $400.00. Mr. Greenberg spent .20 hour reviewing the opposition to the emergency motion to enforce settlement agreement. Mr. Greenberg's compensation totals $80.00

A Friedlander Misler paralegal spent .50 hour filing with the court PSI's opposition to the emergency motion to enforce settlement agreement. The hourly billing rate of a paralegal is $90, just below the hourly rate of $95-$115 that the Local Rules deem as reasonable. The paralegal should be compensated as requested, *i.e.*, $45.00

The undersigned RECOMMENDS the approval of PSI's fees and costs in the amount of **$875.00**. This sanction should be imposed jointly and severally against George Hermina and John Hermina, Plaintiffs' counsel of record when the motion was filed on November 15, 2011. *See* ECF No. 107 at 4. Attorney Michael J. Wilson did not enter his appearance in this case until November 28, 2011. *See* ECF No. 111. The Hermina Law Group is a full service law firm

---

[2] *Rules and Guidelines for Determining Attorneys' Fees in Certain Cases*

serving a diverse group of clients including individuals, celebrities, corporations and foreign governments. *See* http://www.herminalaw.com. No evidence has been presented of the Hermina Law Group's inability to pay a sanction in the amount of $875.00.

      *c.*    *The Service of Hundreds of Identical Requests for Admission*

By way of background, in November of 2011, Plaintiffs' counsel served approximately 70 separate requests for admission on behalf of each of the 12 Plaintiffs. Approximately 60 of the 70 requests were identical. Although the vast majority of the requests were identical, these requests were not sequenced identically in each Plaintiff's requests. "[Plaintiffs] intentionally varied the order of the requests so as to make cutting and pasting (as well as cross-referencing using identical request numbers) by PSI virtually impossible." ECF No. 188-1 at 5.

In their opposition Plaintiffs' counsel deny the accusation of intentionally shuffling the requests within each Plaintiff's requests for admission. "At no time did Plaintiffs' counsel seek to cause Defendant's counsel more work than necessary. The Requests of Admission[] were discussed with each individual Plaintiff and the requests therefore did not remain in the same order." ECF No. 191-1 at 25. According to Plaintiffs' counsel, their trained paralegal "worked with each Plaintiff separately, gathered the requests and forwarded them to the Defendant." *Id.* at 24.

The undersigned observes, if approximately 60 of the 70 requests for admission were *not* identical, then the explanation provided by Plaintiffs' counsel would carry more weight. The fact that approximately 60 of the 70 requests were *identical* seems however to belie the alleged painstaking effort of working with each of the 12 Plaintiffs individually to gather information to draft requests, when only *10* of the 70 requests for admission were specifically tailored to each Plaintiff. These requests do appear to be intentionally scrambled and indicative of

gamesmanship by Plaintiffs' counsel. Further, the evidence clearly demonstrates the manner in which Plaintiffs' counsel organized the 12 sets of requests for admission (where approximately 60 of the 70 requests were sequenced differently) *unreasonably* multiplied the burden on PSI in answering the requests.

The failure of Plaintiffs' counsel to structure the mostly identical requests for admission in a more efficient manner does not prove this action was taken for an improper purpose such as to delay. Plaintiffs' counsel were obligated to serve individually tailored requests for admission on behalf of each of their clients. This obligation was undertaken in good faith but executed poorly. Plaintiffs' counsel failed to adjust their standard practice of propounding requests for admission on behalf of a single client. Plaintiffs' counsel should have drafted requests for admission reflecting the commonality among the 12 Plaintiffs and, separately, drafted requests for admission addressing issues distinctive or unique to each Plaintiff. Although the undersigned does not condone how Plaintiffs' counsel handled the requests for admission, PSI has not demonstrated the conduct of Plaintiffs' counsel constitutes bad faith. The undersigned therefore RECOMMENDS the denial of PSI's requested fees and costs totaling $7,400.00.

   d.     *Plaintiffs' Motion Regarding PSI's Responses to Requests for Admission*

PSI handled the identical requests by responding once to a repetitive request, *i.e.,* in this case, the requests for admission from Plaintiff Shank. For the eleven other identical requests, PSI directed Plaintiffs' counsel to the answer it provided in response to the request by Plaintiff Shank. Dissatisfied with PSI's responses, Plaintiffs' counsel sent a letter to PSI's counsel, who, in turn, responded. Dissatisfied with PSI's additional response, Plaintiffs' counsel moved for an order deeming PSI's requests for admission admitted. *See* ECF No. 116. PSI now seeks

$1,500.00 in fees and costs incurred in responding to Plaintiffs' motion which the undersigned denied.

In denying Plaintiffs' motion on December 20, 2011 the undersigned wrote,

> The Court has reviewed the Requests for Admission individually served by each of the 12 Plaintiffs on Defendant PSI. The vast majority of each of the 12 requests for admission contain identical requests. For example, "PSI never owned or leased a property located at 5011 Norrisville Road, White Hall, Maryland," is Fish (#74), Shank (#74), Benton (#25), Steve[r]son (#73), Wilson (#45), Frank (#35), Matthews (#40), Arthur (#39), Wiggins (#47), Parker (#41), Kline (#26) and Queen (#72). For future reference, Plaintiffs' counsel are advised, when representing multiple plaintiffs before this member of the bench, to serve (a) one joint request for admission for matters identical to all plaintiffs and (b) individualized requests for admission seeking information unique to each plaintiff. Such a procedure will promote efficiency and economy in the prosecution of litigation.

ECF No. 127.

For the reasons outlined in subparagraph c *supra*, and further, because Plaintiffs' counsel had a good faith basis to move to determine the sufficiency of PSI's answers under Federal Rule of Civil Procedure 36(a)(6), the undersigned RECOMMENDS the denial of PSI's requested fees and costs totaling $1,500.00.

e. *Plaintiffs' Responses to PSI's Requests for Admission*

PSI contends the issue of damages, and how each Plaintiff calculated his/her damages, was a persistent problem in the case. PSI served requests for admission asking each Plaintiff to admit, among other things, "that they did not know what their exact damages were, that they had not made an effort to calculate their damages precisely, and that they had not produced any documents to PSI showing a calculation or itemization of their damages." ECF No. 188-1 at 7. PSI claims 11 of the 12 Plaintiffs answered with blanket denials. PSI asserts Plaintiffs' counsel should have known the responses of 11 of the 12 Plaintiffs were blatant misrepresentations. This

became readily apparent during each Plaintiff's deposition when the Plaintiff was unable to explain how he/she calculated damages. PSI's counsel seeks an award of twenty (20) hours or $7,500.00 due to Plaintiffs' purportedly bad faith tactics.

In their opposition Plaintiffs' counsel note PSI's accusations appear to be directed to the Plaintiffs themselves and not to their counsel. Second, PSI did not pursue as a discovery or litigation dispute this matter which it now raises. Third, PSI withheld documents, particularly the Form 139s. "Plaintiffs' calculations were accurate, but they needed verification through records that [PSI] did not produce in this case on a claim by Defendant's counsel that they did not have copies of these forms[.]" ECF No. 191-1 at 30.

In its reply PSI reasserts its contention that Plaintiffs' responses to requests for admission were not true by observing,

> In a nutshell, Plaintiffs argue they could not provide exact calculations of their damages because they were allegedly denied the Forms 139. This argument, of course, begs the question that proves Plaintiffs' responses were made in bad faith - if Plaintiff[s] claim they could not calculate their damages precisely, why did they respond 'deny' to numerous requests that asked them to admit that they did not know their exact damages?

ECF No. 194 at 8.

The undersigned finds, at the time 11 of the 12 Plaintiffs responded to PSI's requests for admission about the calculation of damages, Plaintiffs believed their calculations were accurate. Plaintiffs therefore had no reason to "deny" the request for admission that they could not calculate their damages precisely. Therefore the undersigned RECOMMENDS the denial of PSI's requested fees and costs totaling $7,500.00.

## f. *Plaintiffs' Alleged Refusal to Explain Their Damages Claims*

PSI contends Plaintiffs' refusal to reveal their damages or explain how such damages were calculated was a persistent problem in this case. "Their simple failure to concede what was plainly true unnecessarily prolonged the litigation and caused considerable waste of time and judicial resources." ECF No. 188-1 at 9. PSI claims its assertion is illustrated by Magistrate Judge Day's repeated efforts to mediate the case. PSI then identifies those efforts by Magistrate Judge Day, describing Magistrate Judge Day's supposed frustration with Plaintiffs and what Magistrate Judge Day ordered Plaintiffs to produce at the close of the mediation session. PSI argues its counsel wasted five hours in a mediation session because of Plaintiffs' refusal to produce documents concerning their damages. PSI seeks $1,875.00 in attorneys' fees.

In their opposition Plaintiffs' counsel recall Magistrate Judge Day instructing the parties and their counsel that the discussions at the mediation are confidential and must not be disclosed outside of the mediation. In light of PSI's revelations concerning the mediation, "Plaintiffs are requesting an opportunity to share with this Court their version as to what occurred at the Mediation, which is, not surprisingly, different f[ro]m Mr. Murphy's account of events." ECF No. 191-1 at 24.

In its reply PSI asserts its discussion of certain matters at the mediation in its brief in support of its motion and its disclosure of two letters drafted by its counsel and served on Plaintiffs' counsel in support of its motion do not violate any rule or standard.

> As for the formal ADR that was conducted by the Court, PSI's motion utilize two letters (exhibits 6 and 7) from that process; both letters were *authored by PSI's counsel* and solely presented *PSI's* legal and settlement position. Indeed, PSI purposefully avoided the use of any communications that were authored by Plaintiffs' counsel during the Court-ordered mediation. PSI certainly has the right to waive the confidentiality of any of its *own statements* made during ADR. Moreover, PSI presented the letters precisely

> because they recite Plaintiffs' failure to participate in the mediation
> process in good-faith. Nowhere in either letter is Plaintiffs'
> settlement position revealed. Rather, the letters take issue with
> Plaintiffs' refusal to provide documents and mathematical
> calculations that actually supported their demands.

ECF No. 194 at 12-13.

The undersigned disagrees. Local Rule 607.4 states clearly and unequivocally,

> The Court's ADR process is *confidential*. *Unless otherwise agreed*
> *by the parties and the Court, no disclosure shall be made to*
> *anyone,* including the judicial officer to whom the case is assigned,
> of any dispute resolution communication that in any respect
> reveals the dispute resolution positions of the parties or advice or
> opinions of neutrals. No such communication shall be admissible
> in any subsequent proceeding except as permitted by the Federal
> Rules of Evidence.

Emphasis added.

On page nine of its memorandum of points and authorities in support of its motion, PSI

writes, "Judge Day expressed his frustration with the Plaintiffs' refusal to provide PSI with a

genuine itemization of their damages claim." Later in the same paragraph PSI discloses, "Judge

Day ordered Plaintiffs' counsel to prepare documentation, *on a paycheck by paycheck basis*, that

clearly showed what their alleged damages were, and how they were calculated." ECF No. 188-

1 at 9. It cannot be disputed that the advice and opinion of the neutral, Magistrate Judge Day, is

revealed without an agreement by the parties and the court to this disclosure.

In the letter of September 29, 2011, labeled **FOR SETTLEMENT PURPOSES ONLY**,

from PSI's counsel to one of Plaintiffs' counsel, PSI's counsel wrote,

> You claim Ms. Fish has incurred $372,754.56 in damages and that
> this claim *excludes* damages resulting from her wrongful
> termination and any claim for punitive damages. This means Ms[.]
> Fish claims to have suffered $372,754.56 in damages solely from
> "withheld overtime pay, bonuses, and vacation pay." Not
> surprisingly, you fail to itemize or detail how you arrived at this
> figure. Seeing as this demand is roughly *eight times* the amount of

money that Ms. Fish made in a year, it is mathematically impossible for Ms. Fish to have lost such an amount in the less than two years she worked on the contract.

ECF No. 188-7 at 6.  A courtesy copy of this letter was provided to "The Honorable Charles B. Day."  *See id.* at 11.

The undersigned has reviewed the amended complaint filed on April 7, 2011.  Under "prayer for relief", Plaintiff Fish sought compensatory damages in the amount of $500,000.00 and punitive damages in the amount of $5,000,000.00.  ECF No. 51 at 22.  The undersigned can only conclude the amount of damages ($372,754.56) mentioned in the letter of September 29, 2011 was *specifically disclosed* as part of the mediation process.  Ms. Fish's position as to the damages she sought was disclosed by PSI in support of its motion *without* an agreement of the court and the parties.

Plaintiffs' counsel seek, as a remedy, the court's permission to describe what occurred at mediation from the Plaintiffs' perspective.  The undersigned RECOMMENDS this request be denied.  Two "wrongs" do not make things "right."

The undersigned RECOMMENDS the court direct the Clerk of Court to *disable the links* for PSI's exhibits 6 and 7, *i.e.,* ECF Nos. 188-7 & 188-8.  By disabling the links, only court users may access these exhibits.  No outside party may view the document.  Although members of the public may have seen these exhibits to date, if the court adopts this recommendation, henceforth, these exhibits will not be accessible by the public.  The undersigned further RECOMMENDS the denial of PSI's request for fees ($1,875.00) for the October 4, 2011 mediation session and for fees ($4,462.50) incurred due to PSI filing a motion in limine concerning Plaintiffs' refusal to reveal how they calculated their claims for damages.

2.    *Needless Prolonging of Litigation for an Improper Purpose by Plaintiffs' Counsel*

On March 9, 2012 PSI's counsel sent a letter to Plaintiffs' counsel providing settlement offers for the then six remaining Plaintiffs (Shank, Steverson, Kline, Wilson, Wiggins and Fish). In this same letter PSI's counsel outlined the factual and legal problems common to all remaining Plaintiffs as well as factual and legal problems pertinent to each individual Plaintiff. PSI's counsel reminded Plaintiffs' counsel that PSI prevailed on the issue of successor liability. Next, PSI's counsel noted there is no private right of action under the Service Contract Act.

> Only the Government may assert such a claim against an employer; the employees are limited to administrative remedies. Consequently, all of Plaintiffs' wage claims regarding base pay, premium pay, holiday pay − everything except overtime pay − are procedurally flawed as the Plaintiffs have no right to pursue such claims in private litigation. Indeed, the only way an individual may seek redress for such claims is through the Department of Labor.

ECF No. 188-9 at 3-4.

PSI's counsel further warned Plaintiffs' counsel about the Plaintiffs' failure to explain how they calculated their alleged damages.

> Following its receipt of the interrogatory responses, PSI repeatedly demanded that Plaintiffs provide proper itemizations and calculations of their alleged damages. In particular, approximately three weeks before the Plaintiffs' depositions began, I wrote John Hermina to remind him of the Plaintiffs' obligations under Rule 26(e) and to request that any supplemental explanation of any Plaintiffs' damages calculation be provided before the depositions were conducted. . . When this case gets closer to trial, PSI will file a motion *in limine* asking that the Plaintiffs not be permitted to present any explanation of their alleged damages that is any more specific or detailed than what they presented in their interrogatory responses. If that motion is granted, no Plaintiff will be able to present a case that would allow a jury to make a reasoned, non-speculative calculation of damages.

*Id.* at 5.

On April 4, 2012 Plaintiffs Kline, Wilson and Steverson settled their claims with PSI, *see* ECF No. 136, which the court approved two days later, *see* ECF No. 137. On April 25, 2012 the court granted PSI's motion for partial summary judgment on Counts Eleven and Twelve of Plaintiffs' amended complaint. *See* ECF No. 139. Count Eleven concerned Plaintiff Fish's breach of contract claim. The court ruled as PSI's counsel had predicted in his March 9, 2012 letter. *See* ECF No. 188-9 at 10 ("PSI's motion for summary judgment regarding Fish's claim to have a five-year contract is presently pending. PSI is confident the motion will be granted as her argument that the offer letter she received was a five-year employment contract is groundless. Indeed, nothing in the offer letter mentions *any* period of guaranteed employment, much less five years.").

Once the court ruled in favor of PSI on Counts Eleven and Twelve, PSI's counsel re-engaged Plaintiffs' counsel about settling the case. The following e-mail was sent to Michael J. Wilson, one of Plaintiffs' counsel.

> Mike-with SJ being granted on Fish's claim of a five-year contract, the remaining plaintiffs are getting down to the short strokes. The way I see it, the only remaining claims are: 1) wage claims for the period when the three Plaintiffs actually worked for PSI − that's less than five months for Fish, less than 6 months for Shank and zero time for Wiggins; 2) successor liability for the only possible federal claim -- which would be unpaid overtime for the 9 months or so when Eagle ran the project; and 3) Fish's claim for wrongful termination of an at-will employee (which we both know is nearly impossible to win). Shank has already lost his wrongful termination claim, and Wiggins never asserted one.
>
> In light of how personal the Plaintiffs have made this case, I can assure you that if PSI is forced to take this [case to] trial, and is awarded its costs, PSI will aggressively seek to collect the awards through garnishments and other means.
>
> Whether Plaintiffs were initially led by the Herminas to believe this case was greater than it was, or for any number of other reasons, Plaintiffs approached this case as if they had an eight

> figure claim when, at best, they arguably had some claims about a few miscalculated paychecks worth a few hundred dollars − frankly, claims that were within the exclusive jurisdiction of the DOL. It is time to bring the economic waste to an end. If you want to present me with real calculations of what the claimed underpayments were for the few months Plaintiffs were employed by Eagle (for overtime only) and PSI, I'd be happy to look at it. Alternatively, if Plaintiffs would like to make settlement offers that are consistent with the nuisance value settlements that have been paid to date, I imagine we can work something out. If we can't, my next step is a motion in limine to limit Plaintiffs' damages evidence to what was described in their interrogatory responses. If that motion is granted, this case will be effectively over.

ECF No. 188-10 at 2.

On April 27, 2012 PSI filed a motion in limine to prevent Plaintiffs from presenting evidence of alleged wage claims pursuant to the Service Contract Act. *See* ECF No. 141. On April 30, 2012 Plaintiffs' counsel, Michael J. Wilson, responded to the e-mail from PSI's counsel asking, "can you please re-confirm what PSI is prepared to offer the remaining Plaintiffs (Shank, Fish, and Wiggins) for a total release from this action and any other potential actions." ECF No. 188-10 at 2. On May 1, 2012 PSI filed a motion in limine to prohibit Plaintiffs from presenting evidence of alleged damages beyond what was provided through the date of their depositions. *See* ECF No. 143. That same day, during a telephone conversation, counsel for Plaintiffs indicated that the remaining Plaintiffs would dismiss the case in a few weeks if the case did not settle. PSI's counsel sent the following e-mail to Plaintiffs' counsel (Michael J. Wilson) on May 2, 2012.

> Mike-in light of our conversation the other day and your remark that the Plaintiffs might seek a stipulation of dismissal if the case isn't settled in the next few weeks, I wanted you to know that it is PSI's position that it would not agree to dismissal unless it was with prejudice. In light of how far this case has progressed, and the amount of money PSI has spent, I think it is extraordinarily unlikely that Plaintiffs could get a motion to dismiss without prejudice granted over PSI's objection.

ECF No. 188-11 at 2.

After this e-mail, counsel for the parties apparently had limited contact.  In subsequent communications, Plaintiffs' counsel alluded to a possible claim under the False Claims Act and also alluded to unspecified new evidence against PSI.  During the December 10, 2012 pretrial conference the court granted PSI's motion in limine to prevent Plaintiffs from presenting evidence of alleged wage claims pursuant to the Service Contract Act and also granted PSI's motion in limine to prohibit Plaintiffs from presenting evidence of alleged damages beyond what was provided through the date of their depositions.  Those rulings were summarized in the Order of December 11, 2012.  *See* ECF No. 176.  PSI's counsel had correctly predicted these favorable rulings.  That same day PSI's counsel wrote another letter to Plaintiffs' counsel stating in pertinent part,

> In light of the Court's rulings yesterday, it should be apparent to you and the Plaintiffs that this case is now effectively over.  For whatever reason, Plaintiffs and their counsel made the dubious tactical decision to play coy about their damages throughout discovery.  That decision backfired as I told you it would.  Compounding matters, the Court has now ruled that the only wage claims Plaintiffs may pursue at trial are claims for allegedly unpaid overtime.  Because the Plaintiffs never stated the amount of overtime they claimed were unpaid, or how they calculated that alleged amount, the combined effect of yesterday's rulings is that it will be impossible for Plaintiffs to prove any recoverable damages at trial.

> \*                          \*                          \*

> In light of all of the foregoing, and in an effort to avoid continued litigation expenses, PSI offers Plaintiffs a mutual walk away; Plaintiffs will dismiss their claims with prejudice and, in exchange, PSI will forgo any claims for costs and attorneys' fees.  This offer will remain open until 8:00 AM on Thursday, December 13, 2012.  PSI has no intention to be bound until the parties have executed a formal writing describing all of the terms of the settlement including, but not limited to, acceptable mutual releases.

ECF No. 188-17 at 2, 3.

On December 30, 2012 Plaintiffs' counsel informed PSI's counsel that the three remaining Plaintiffs accepted PSI's offer to terminate the action entirely with prejudice. *See* ECF No. 188-18 at 2. However, in early January 2013, the three remaining Plaintiffs moved to continue the trial and requested a settlement conference which the court denied. *See* ECF Nos. 180, 183. Meanwhile, the acceptance of PSI's offer to settle the case by Plaintiff Fish was withdrawn and she demanded $75,000.00 to settle her claims. PSI remained steadfast about its terms for dismissing the case. The three remaining Plaintiffs shortly thereafter dismissed their claims without receiving any money.

In light of all the evidence outlined above, it is apparent that Plaintiffs' counsel (John Hermina, George Hermina and Michael J. Wilson) were on <u>actual notice</u> about the significant factual and legal problems with the remaining Plaintiffs' claims. PSI's counsel concisely highlighted the issues with Plaintiffs' "claims" under the Service Contract Act, the lack of evidence supporting Plaintiffs' claims for damages, and further individually identified issues with the remaining Plaintiffs' specific claims. PSI's counsel cited case law in his letters which supported PSI's position about the viability of Plaintiffs' claims.

Although the undersigned finds Plaintiffs' counsel were on actual notice as of May 2, 2012, the undersigned concurs with PSI that the clock should start on July 1, 2012, the date discovery closed. The lack of merit regarding the claims of Plaintiffs Shank, Wiggins and Fish was evident. Plaintiffs' counsel nevertheless protracted this litigation to such an extent that Plaintiffs Shank, Wiggins and Fish ultimately settled their claims on the eve of trial without any compensation. These Plaintiffs had an opportunity to settle their claims for some money. As PSI's counsel noted in his letter of December 11, 2012,

19

On July 22, 2011, PSI made offers of judgment as follows: $6,000.00 to Fish; $1,000.00 to Shank; and $500.00 to Wiggins. On March 20, 2012, PSI made a second round of offers of judgment: $5,000.00 to Fish; $3,500.00 to Shank; and $2,500.00 to Wiggins.

ECF No. 188-17 at 2.

Plaintiffs' counsel had several opportunities to dismiss voluntarily the claims of Plaintiffs Shank, Wiggins and Fish but they declined to do so. PSI's counsel initiated settlement discussions on several occasions but those overtures were rebuffed. After the close of discovery, Plaintiffs' counsel knew or should have known their remaining clients' claims lacked merit.

> [I]n *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 [] (1978), [the Supreme Court] indicated that sanctions are appropriate for pursuing a case after it becomes clear that the case is without merit. The Court noted that sanctions are appropriate where a "plaintiff is found to have brought or *continued* such a claim in bad faith." *Id.* at 422 [] (emphasis added). "[D]ogged pursuit of a colorable claim becomes actionable bad faith once the attorney learns (or should have learned) that the claim is bound to fail." *In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985).

*Blue*, 914 F.2d at 537.

Plaintiffs' counsel knew, based on the other nine Plaintiffs who settled their claims before discovery closed on July 1, 2012, the nominal values of compensation the nine Plaintiffs received via settlement in comparison to the values they asserted in the Amended Complaint. Although Plaintiffs' counsel may have believed Plaintiff Fish's claims were dissimilar to the other nine Plaintiffs' settled claims because Plaintiff Fish was allegedly threatened and because Plaintiff Fish allegedly was not an at-will employee, a careful review of the evidence and the law should have placed Plaintiffs' counsel on notice regarding the lack of merit at to Plaintiff Fish's at-will employee claim. The evidence in support of the alleged threat was not as overwhelming

as Plaintiffs' counsel may have believed. The fate of her other claims, as well as the claims of Plaintiffs Wiggins and Shank, should have been evident.

Plaintiffs' counsel nonetheless continued to pursue the case on behalf of the remaining three Plaintiffs. Plaintiffs' counsel advised PSI's counsel on May 2, 2012, approximately two months before discovery closed, that the three remaining Plaintiffs "might seek a stipulation of dismissal if the case isn't settled in the next few weeks. . ." ECF No. 188-11 at 2. Such a disclosure is indicative of the recognition by Plaintiffs' counsel about the merits of their clients' claims. No such stipulation of dismissal was filed. When the three remaining Plaintiffs ultimately filed their stipulations of dismissal on January 6 and 7, 2013, it was on the eve of trial.

In this case the evidence of record clearly shows Plaintiffs' counsel conducted the litigation on their clients' behalf in a manner which unreasonably and vexatiously multiplied the proceedings, resulting in excess costs for PSI. Bad faith by Plaintiffs' counsel is clear. They employed tactics such as alluding to possible claims under the False Claims Act and alluding to possible new evidence for the sole purpose of forcing a settlement on their terms at specific dollar amounts to avoid any resolution of the claims on the merits. The conduct of Plaintiffs' counsel in this case is analogous to Plaintiff's counsel in *Salvin v. American National Insurance Co.*, 281 F. App'x 222 (4th Cir. 2008). "[L]itigants and their counsel are not free . . . to disregard evidence that comes to light in discovery and to continue to press their case without any reasonable belief" that the claims have merit. *Blue*, 914 F.2d at 537.

For the period of July 1, 2012 until the case was settled (January 7, 2013), PSI claims it incurred $108,000.00 in attorneys' fees and expenses. "At a minimum, PSI incurred more than $27,000.00 in attorneys' fees and costs from December 13, 2012 (when PSI's offer of a walk away expired) until the case settled just hours before trial." ECF No. 188-1 at 17. PSI is entitled

to this requested compensation. The undersigned has reviewed the hours billed during this period. Mr. Murphy billed 72.70 hours at an hourly rate of $375.00 for a total cost of $27,262.50. Mr. Greenberg billed .40 hour on January 4, 2013 at an hourly rate of $525.00. In accordance with the Local Rules, the undersigned recommends Mr. Greenberg's hourly rate be adjusted downward to $400.00. With that adjustment, the amount Mr. Greenberg billed totals $160.00. The total amount of the sanctions for the period of December 13, 2012 to January 7, 2013 is **$27,422.50**. "[S]anctions are appropriate for pursuing a case after it becomes clear that the case is without merit." *Blue*, 914 F.2d at 537.

Since Plaintiffs' counsel knew or should have known the very limited value of the three remaining Plaintiffs' claims and the lack of evidence to support their claimed damages as of the close of discovery on July 1, 2012, Plaintiffs' counsel continued pursuit unreasonably and vexatiously multiplied the cost of the proceedings. Between August 21, 2012 and November 7, 2012 Mr. Murphy spent roughly 128.90 hours in preparation for the jury trial scheduled to commence January 8, 2013. The work performed included selecting and organizing trial exhibits, drafting pretrial statements, selecting deposition passages to designate for trial, researching jury instructions, reviewing opposing counsel's pretrial statement, drafting non-standard jury instructions, drafting a motion to strike a witness at trial designated by Plaintiffs, researching ways to oppose Plaintiffs' proposed jury instructions and conducting other legal research. At an hourly rate of $375.00, the total cost incurred by PSI for those 128.90 hours billed by Mr. Murphy is $48,337.50. Although this amount is a fraction of the total $108,000.00 incurred by PSI from July 1, 2012 until January 7, 2013, the undersigned believes a sanction in this amount, in addition to the $27,422.50, would be too onerous. The undersigned therefore adjusts the amount downward to 1/3 or **$16,112.50**.

Due to the bad faith of Plaintiffs' counsel as outlined above, the undersigned RECOMMENDS an award pursuant to 28 U.S.C. § 1927 in favor of PSI and against Plaintiffs' counsel (George Hermina, John Hermina and Michael J. Wilson) jointly and severally in the amount of *$43,535.00*. "'Inability to pay . . . should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status.'" *Salvin*, 281 F. App'x at 226 (citation omitted). The undersigned further RECOMMENDS each of Plaintiffs' counsel file an affidavit describing his ability (or lack thereof) to pay such a sanction. Additionally, each counsel must submit another affidavit describing the work he performed on behalf of the remaining Plaintiffs between July 1, 2012 and January 7, 2013.

The undersigned therefore RECOMMENDS PSI's motion for award of costs and attorneys' fees to be imposed against Plaintiffs' counsel pursuant to 28 U.S.C. § 1927 (ECF No. 188) be GRANTED IN PART & DENIED IN PART.

B.     *Plaintiffs' Motion to Strike or Dismiss PSI's Motion for Attorneys' Fees*

Plaintiffs move to strike (or dismiss) PSI's motion for attorneys' fees and costs on the grounds that PSI's corporate charter in Maryland was forfeited on November 15, 2012; the charter remains forfeited as of January 22, 2013; and PSI's motion for attorneys' fees and costs is therefore inoperative, null and void. Plaintiffs cite as authority the Maryland Corporations & Associations Article § 3-503(d).

In its opposition PSI notes, at the outset, it is a Virginia corporation, not a Maryland corporation. Second, the statute cited by Plaintiffs applies to Maryland corporations, not foreign corporations such as PSI.

> The State of Maryland does not grant *charters* to foreign
> corporations. Rather, the State of Maryland requires that foreign

corporations merely register to do business in the State. PSI's corporate charter − granted in Virginia − did not lapse. Rather, PSI's authorization to transact business, as a foreign corporation, in Maryland lapsed. In short, PSI was never a nullity − as argued by Plaintiffs − because it never lost its corporate charter. Accordingly, Plaintiffs' arguments regarding the fate of *Maryland* corporations that allow their corporate *charter* to lapse are of no moment.

Had Plaintiffs' counsel bothered to check Maryland's corporate records online, it would have seen that PSI filed to reinstate its authorization to do business in Maryland back on December 17, 2012. At that time, PSI paid the $200.00 penalty it incurred as a result of allowing its authorization to do business in Maryland [to] lapse. PSI's authorization to conduct business in Maryland has since been revived.

ECF No. 193 at 2 (citations omitted).

PSI further notes that the corporate "door closing" statutes are pertinent in federal cases based on diversity. Jurisdiction in this litigation was based on a federal question. Thus the corporate "door closing" statute does not preclude PSI from seeking fees and expenses. PSI requests that Plaintiffs' motion be denied and that it be awarded its attorneys' fees and costs incurred in responding to the motion.

Jurisdiction in this case was based on a federal question. Since this litigation was not a federal diversity case, the application of Article 7-301 of Maryland's Corporations and Associations Article is irrelevant. *See United Merchants & Mfrs., Inc. v. David & Dash, Inc.*, 439 F. Supp. 1078, 1086 (D. Md. 1977).

The undersigned RECOMMENDS the denial of Plaintiffs' motion to strike or dismiss PSI's motion for award of costs and attorneys' fees to be imposed against Plaintiffs' counsel pursuant to 28 U.S.C. § 1927 (ECF No. 190). Because this motion lacks merit and unnecessarily multiplied proceedings, the undersigned RECOMMENDS PSI be awarded its reasonable

attorneys' fees and costs incurred in responding to this motion. PSI should be directed to file an affidavit about the fees and costs it incurred.

C.      *Plaintiffs' Motion for Sanctions against PSI's Counsel pursuant to 28 U.S.C. § 1927*

       1.      *Plaintiffs Seek Fees for Having to Respond to PSI's Motion for Sanctions*

Plaintiffs seek an award of $27,685.00 on the grounds that "Defendant's filing of the instant Section 1927 motion forms an independent basis for the award of attorneys' fees." ECF No. 192-1 at 37. In support of their position Plaintiffs argue PSI filed the motion for sanctions even though it lacked standing since PSI forfeited its charter in Maryland. Plaintiffs also claim PSI's counsel cited the wrong standard for sanctions under 28 U.S.C. § 1927.

The mere fact that counsel responds to a motion for sanctions under 28 U.S.C. § 1927 is not a basis for an award under § 1927. The basis for an award occurs when the court finds a counsel "so multiplies the proceedings in any case unreasonably and vexatiously. . . ." 28 U.S.C. § 1927.

The undersigned has previously addressed the "merits" of Plaintiffs' contention that PSI lacked standing to move for sanctions since PSI's charter in Maryland was forfeited. PSI is a corporation organized under the laws of the Commonwealth of Virginia. Plaintiffs have not presented any evidence that PSI, as a Virginia corporation, *ceased to exist* during this litigation or post-litigation. What lapsed in Maryland was PSI's registration as a foreign corporation doing business in Maryland. PSI has subsequently rectified this matter and is presently a registered foreign corporation in Maryland.

With regard to the standard for evaluating claims under 28 U.S.C. § 1927, the undersigned has reviewed the pertinent Fourth Circuit case law and summarized the controlling standard. The undersigned RECOMMENDS the denial of Plaintiffs' claim for $27,685.00 solely

on the grounds that the filing of their response to PSI's motion for sanctions constitutes an *independent basis* for an award of attorneys' fees.

    *2.    PSI's Alleged Vexatious Motion for Determination that Plaintiffs Waived Attorney-Client Privilege with Regard to Certain Matters*

Plaintiffs seek $6,614.25 for time spent in having to respond to PSI's motion for a determination that Plaintiffs have waived the attorney-client privilege with regard to certain matters. *See* ECF No. 114. Plaintiffs assert there was no legitimate purpose in filing this motion.

> There was no pressing discovery issue related to this Motion; there was no trial dispute; and there was no controversy, in fact, that was covered by the Motion, and the subject matter of the Motion was not to advance any aspect of the litigation. The Motion "did nothing to strengthen the Defendant's substantive legal position, and served only to potentially denigrate Plaintiff's counsel in the eyes of the Court," which is an improper purpose that evidences bad faith on the part of Defendant's counsel.

ECF No. 192-1 at 25 (citation omitted).

After the motion for determination was fully briefed, the undersigned granted in part and denied in part the motion. The undersigned found the scope of the disclosure was not as broad as PSI contended but recognized a narrower scope of disclosure was made. *See* ECF No. 130. Counsel for PSI raised a legitimate issue as reflected in a partially favorable ruling. The evidence does not suggest PSI's counsel filed the motion to unreasonably or vexatiously multiply proceedings in this litigation. The undersigned therefore RECOMMENDS the denial of Plaintiffs' request of $6,614.25 in opposing PSI's motion for determination.

3.    *Fees for Bad Faith by PSI's Counsel for Allegedly Withholding Crucial Documents & for Harassing Conduct at Depositions*

a.    *Alleged Withholding of Crucial Documents*

Plaintiffs assert a document crucial in establishing their damages was the Form 139.  PSI did not disclose this crucial form.  Nevertheless PSI pressed Plaintiffs for detailed information in support of their claims for damages.  Plaintiffs contend the detailed information could be derived *only* from those Form 139s.

> The willful lack of disclosure . . . allowed Mr. Murphy to argue that the Plaintiffs could not state "exactly" what their losses were. Indeed, Mr. Murphy spent hours pressing Plaintiffs to answer "exactly" and claiming, all the while, that his client did not have the 139s, among other documents.  To this date, Mr. Murphy has not explained this failure to disclose.

ECF No. 192-1 at 14.

In PSI's reply in support of its motion for award of costs and attorneys' fees, PSI's counsel reveals he informed Plaintiffs' counsel in December of 2011 of PSI's attempt to obtain the Government's permission to disclose the Forms 139s to Plaintiffs' counsel.  The Government refused PSI's request to disclose.  *See* ECF No. 194 at 2.

PSI's counsel did not merely inform Plaintiffs' counsel of his lack of authority to disclose the Form 139s.  PSI's counsel also provided a copy of the e-mail exchanges between PSI and the Government as well as PSI's formal request for permission to disclose the Form 139s to Plaintiffs' counsel.  *See* ECF No. 194-1 at 4-6.  Plaintiffs' counsel were specifically notified in **two letters** of December 5, 2011 that PSI did not have the authority to release the Form 139s. *See id.* at 2-3, 7-9.  The first letter of December 5, 2011 from PSI's counsel to George Hermina states,

> I am writing regarding Plaintiffs' request for the production of GSA form 139s going back in time to the beginning of the

NBACC project. Despite the fact that Plaintiffs knew that these forms were not produced when the parties exchanged document productions more than six months ago, Plaintiffs have recently raised the issue of the production of these forms.

As I have repeatedly expressed, the 139s do not belong to PSI. To the contrary, the documents are the property of the Department of Homeland Security ("DHS"). Accordingly, PSI does not have the authority to produce them absent DHS approval. Moreover, PSI does not retain copies of the forms after batches are periodically delivered to DHS.

Because of the Plaintiffs' recent requests for the forms, PSI recently reached out to determine if DHS would provide the forms so that PSI could produce them in this litigation. As you can see from the attached correspondence, DHS responded that the forms are "official government documents that cannot be released" without the approval of the DHS's Office of Procurement Operations. Jerry Buday, the Contract Specialist, replied that PSI could only obtain the documents by making a request under the Freedom of Information Act ("FOIA").

In light of the forgoing, the 139 forms Plaintiffs seek are not in PSI's possession, custody or control. Plaintiffs may make a FOIA request as easily as PSI can. Accordingly, if Plaintiffs insist on reviewing the 139 forms, I trust they will make such a request.

Feel free to call me if you have any questions.

ECF No. 194-1 at 2-3.

In their opposition to PSI's motion and in their own motion, Plaintiffs **fail** to acknowledge their receipt of the December 5, 2011 correspondences from PSI's counsel. Plaintiffs **fail** to admit they were notified the Form 139s were not in the possession, custody or control of PSI. Moreover, Plaintiffs **fail** to explain why they did not submit a FOIA request to DHS requesting the Form 139s. Plaintiffs charge on multiple occasions, in multiple filings, that PSI withheld the Form 139s. These accusations are false. Plaintiffs, through their counsel, had an opportunity to request and possibly obtain the 'crucial' Form 139s. The non-production of the Form 139s falls squarely on the shoulders of Plaintiffs' counsel, not PSI's counsel. For the

above reasons, the undersigned RECOMMENDS no relief be granted to Plaintiffs regarding this matter.

b. *The Conduct of PSI's Counsel at Depositions*

Plaintiffs claim they were harassed by PSI's counsel during depositions. The "harassment" consisted of PSI's counsel texting and using his telephone, PSI's counsel alluding to a sanction imposed against one of Plaintiffs' counsel, and the disruptive behavior of PSI's counsel by laughing uncontrollably to demean Plaintiffs' counsel or by insinuating Plaintiffs' counsel needs a translator. Plaintiffs argue the "undisputed use of [PSI's counsel's] telephone and 'texting' served to prolong the proceedings unnecessarily while it showed his disrespect for the Plaintiffs and the legal system." ECF No. 192-1 at 29. Plaintiffs request $3,750.00 for the improper conduct of PSI's counsel.

The undersigned has read all exhibits including every deposition transcript. Some matters are obvious from the transcripts; others matters may be inferred. What is clear to the undersigned is counsel did not comport themselves to the standard expected as officers of the court. The instance of uncontrollable laughter does not rise to the level of demeaning opposing counsel. Alluding to the sanctioning of opposing counsel however serves no legitimate purpose but to demean and belittle. The texting and the use of a telephone while examining a deponent are rude and unprofessional.

While the conduct of PSI's counsel in some instances is below the standard expected, Plaintiffs fail to demonstrate such conduct unreasonably and vexatiously multiplied proceedings in the case. The undersigned therefore RECOMMENDS the denial of Plaintiffs' request for an award of $3,750.00.

4.    *Disclosure of Mediation Documents & Information and of Confidential Settlement Communications*

Finally, Plaintiffs assert the disclosure of confidential mediation and settlement communications by PSI's counsel constitutes bad faith.   The undersigned has previously addressed the disclosure of mediation documents and information.  *See supra*.   PSI's counsel, in good faith, presumed he was not violating the veil of confidentiality since he was disclosing letters he authored.   PSI's counsel apparently did not read Local Rule 607.4 because, if he had, he would have recognized the release of certain letters and his summary of the neutral's alleged frustration were prohibited.   PSI's counsel violated this court's Local Rule 607.4.   The undersigned RECOMMENDS PSI's counsel be **advised** to abide by Local Rule 607.4 in all future cases when representing a party before this court.

A review of the docket reveals this case was referred to Magistrate Judge Day for settlement on October 14, 2010.   *See* ECF No. 27.   A settlement conference was held on February 23, 2011.   A follow-up settlement conference was held on October 4, 2011.   On November 11, 2011 Magistrate Judge Day was no longer assigned to the case.

One of the exhibits in support of PSI's motion for award of costs and attorneys' fees is a September 29, 2011 letter from PSI's counsel to John Hermina, one of Plaintiffs' counsel.   A courtesy copy of this letter was provided to The Honorable Charles B. Day.   *See* ECF No. 188-7. This letter is clearly part of the mediation process and should have not been disclosed *without the consent* of Plaintiffs' counsel and Magistrate Judge Day.

In contrast, the March 9, 2012 letter, labeled "FOR SETTLEMENT PURPOSES ONLY," from PSI's counsel to Michael J. Wilson, one of Plaintiffs' counsel, is clearly *after* mediation efforts by Magistrate Judge Day had ceased.   *See* ECF No. 188-9.   There are passing references to damages claimed by the remaining Plaintiffs but the March 9, 2012 letter does not

mention the amount of money each remaining Plaintiff sought to settle his/her claims. This letter reveals the assessments of PSI's counsel about various claims but does not reveal any confidences shared by Plaintiffs' counsel in their effort to settle the case. The inclusion of the March 9, 2012 letter, even though labeled for settlement purposes only, is not inappropriate and does not violate any rules.

For the above reasons, the undersigned RECOMMENDS the denial of Plaintiffs' requested fees and costs due to the violation of Local Rule 607.4 by PSI's counsel. The undersigned further RECOMMENDS Plaintiffs' motion for sanctions against Defendant's counsel pursuant to 28 U.S.C. § 1927 (ECF No. 192) be denied.

D.    *Motion for Leave to File Supplemental Response to PSI's Motion & Supplementary Exhibits/Evidence in Support of Plaintiffs' Motion for Sanctions*

Plaintiffs move for leave to file a combined (a) supplemental response to PSI's motion for award of costs and attorneys' fees and (b) supplementary exhibits/evidence and memorandum of law in support of Plaintiffs' motion for sanctions against PSI's counsel pursuant to § 1927. The undersigned has read this motion for leave (ECF No. 197), PSI's opposition (ECF No. 198) and Plaintiffs' reply (ECF No. 200). The matters raised in the motion for leave are **not** relevant to the issues in this litigation. The undersigned therefore RECOMMENDS Plaintiffs' motion for leave to file (ECF No. 197) be denied.

E.    *PSI's Motion to Strike Plaintiffs' Reply Brief and for Sanctions*

PSI moves to strike Plaintiffs' reply brief (ECF No. 200) on the grounds that counsel for Plaintiffs accuse PSI's counsel, without any basis, of fabricating the 2011 e-mail exchanges where the Government prohibited PSI from releasing the Form 139s to Plaintiffs' counsel. Plaintiffs further allege PSI's counsel did not produce a copy of an assignment agreement, even though that assignment agreement was not only bates labeled and produced during discovery, but

was subsequently identified as a trial exhibit in the pretrial statement and included in PSI's trial

binder. The undersigned has read the motion to strike (ECF No. 201), Plaintiffs' response (ECF

No. 202) and PSI's reply (ECF No. 203).

Surprisingly, Plaintiffs' counsel raise, once again, the issue of the non-production of the

Form 139s. In their reply brief they declare, "Plaintiffs now believe that the lack of ability to

copy and produce such records was a total fabrication. Moreover, such a stance is completely

inconsistent with the NBACC Contract terms itself which expressly allows for and encourages

the Defendant contractor to retain complete copies of the original Forms." ECF No. 200 at 4.

Plaintiffs' counsel repeatedly and unceasingly point to PSI's alleged failure to produce

the Form 139s. Plaintiffs' counsel however fail to provide any explanation why they did not

submit a FOIA request to DHS requesting the allegedly important Form 139s. Plaintiffs' counsel

knew as of *December 5, 2011* that PSI did not have the authority to disclose the Form 139s.

Moreover, as officers of this court, Plaintiffs' counsel should have inquired about the validity of

the e-mail exchanges before cavalierly challenging the authenticity and accusing opposing

counsel of fabrication.

Similarly, Plaintiffs' counsel have not submitted any evidence to substantiate their

assertion that PSI's counsel withheld the assignment agreement during discovery. An assertion

of wrongdoing against opposing counsel must not be made indiscriminately. Mud-slinging, for

the sole purpose of trying to make the other side look bad, is well below the conduct expected of

members of the bar of this court.

In their opposition Plaintiffs' counsel argue PSI's request that the court strike Plaintiffs'

reply brief is procedurally improper under Federal Rule of Civil Procedure 12(f) because the

reply brief is not a pleading. The undersigned concurs in light of *Johnson v. Prince George's*

*County, Maryland*, No. DKC 10-0582, 2011 WL 806448, at *1 n.1 (D. Md. Mar 1, 2011) (denying motion to strike because Rule 12(f) does not permit exhibits submitted in support of a motion to be stricken under the Federal Rules).

The undersigned RECOMMENDS the Court grant in part and deny in part PSI's motion to strike Plaintiffs' reply brief and for sanctions (ECF No. 201). In lieu of striking Plaintiffs' reply brief, the undersigned RECOMMENDS the court direct the Clerk of Court *to disable the link* to Plaintiffs' reply brief (ECF No. 200). By disabling the link, only court users may access the reply brief. No outside party may view the document. Although members of the public may have seen the reply brief to date, if the court adopts this recommendation, henceforth, the reply brief will not be accessible by the public. Moreover, PSI should be directed to file an affidavit about the fees and costs it incurred in filing its motion and reply.

## RECOMMENDATIONS

The undersigned summarizes the recommendations as follows:

(a) PSI's Motion for Award of Costs and Attorneys' Fees to be Imposed against Plaintiffs' Counsel pursuant to 28 U.S.C. § 1927 [ECF No. 188] be granted in part and denied in part;

(b) That a sanction of **$875.00** be imposed jointly and severally against John Hermina and George Hermina;

(c) That a sanction of **$43,535.00** be imposed jointly and severally against John Hermina, George Hermina and Michael J. Wilson. Each counsel should be permitted to file an affidavit about his ability (or lack thereof) to pay the sanction. Further, each counsel should be allowed to file an affidavit describing work performed for the then remaining Plaintiffs between July 1, 2012 and January 7, 2013;

(d) That the court **direct** the Clerk of Court *to disable the links* to PSI's exhibits 6 and 7 [ECF Nos. 188-7 & 188-8] in support of its motion for award of costs and attorneys' fees;

(e) That the court **advise** PSI's counsel (Thomas F. Murphy) to abide by Local Rule 607.4 in all future cases when representing a party before this court;

(f) That the court deny Plaintiffs' Motion to Strike or Dismiss PSI's Motion for Award of Costs and Attorneys' Fees to be Imposed against Plaintiffs' Counsel pursuant to 28 U.S.C. § 1927 [ECF No. 190];

(g) That PSI be awarded its reasonable attorneys' fees and costs incurred in responding to Plaintiffs' Motion to Dismiss or Strike;

(h) That the court deny Plaintiffs' Motion for Sanctions against Defendant's Counsel pursuant to 28 U.S.C. § 1927 [ECF No. 192];

(i) That the court deny Plaintiffs' Motion for Leave to File Supplemental Response to Defendant's Motion for Award of Costs and Attorneys' Fees and Supplementary Exhibits/Evidence and Memorandum of Law in Support of Plaintiffs' Motion for Sanctions against Defendant's Counsel pursuant to § 1927 [ECF No. 197];

(j) That the court grant in part and deny in part PSI's Motion to Strike Plaintiffs' Reply Brief and for Sanctions [ECF No. 201];

(k) That in lieu of striking Plaintiffs' reply brief [ECF No. 200], the court **direct** the Clerk of Court *to disable the link* to ECF No. 200; and

(l) That PSI be awarded its reasonable attorneys' fees and costs incurred in filing its motion [ECF No. 201] and reply [ECF No. 203].

<u>August 15, 2013</u>

_____/s/_____
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE